Slip Op. 11-69

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHINYEI CORPORATION OF AMERICA,<br><br>            Plaintiff,<br><br>       v.<br><br>UNITED STATES,<br><br>            Defendant. | Before: Jane A. Restani, Judge<br><br>Court No. 08-00191<br><br>Public Version |

# OPINION

[In Customs reliquidation matter Plaintiff's motion for summary judgment granted. Defendant's motion for summary judgment denied.]

Dated: June 15, 2011

Charles H. Bayar for the plaintiff.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Amy M. Rubin); Edward N. Maurer, International Trade Litigation, U.S. Customs and Border Protection, of counsel for the defendant.

Restani, Judge: This matter is before the court on Plaintiff Shinyei Corporation of America ("SCA") challenge to the U.S. Customs and Border Protection's ("Customs") denial of protest. SCA moved for summary judgment and the Defendant United States ("the Government") cross-moved for summary judgment. The former is granted and the latter is denied.

## BACKGROUND[1]

The entries at issue, Japanese ball bearings, were made in 1993 and 1994 and were subject to antidumping duty cash deposit rates of either 9.22% or 13.11%.[2] Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Br.") 9. SCA deposited estimated antidumping duties. Id. at 9. In March 14, 2001 Liquidation Instructions, Message 1073202, the United States Department of Commerce ("Commerce") instructed Customs:

> FOR ALL SHIPMENTS OF BALL BEARINGS AND PARTS THEREOF FROM JAPAN PRODUCED BY NANKAI SEIKO CO., LTD. (SMT), EXPORTED BY, IMPORTED BY, OR SOLD TO (AS SHOWN ON THE COMMERCIAL INVOICE OR CUSTOMS DOCUMENT) THE FIRMS LISTED BELOW, AND ENTERED OR WITHDRAWN FROM WAREHOUSE FOR CONSUMPTION DURING THE PERIOD 05/01/1993 THROUGH 04/30/1994, ASSESS AN ANTIDUMPING LIABILITY EQUAL TO THE PERCENTAGE OF THE ENTERED VALUE LISTED BELOW.[3]

Pl.'s Mot. for Summ. J. Ex. 14.[4] SCA purchased the subject goods from Shinyei Kaisha ("SK"),

---

[1] SCA makes numerous procedural challenges relating to the Government's presentation of its case. Largely they appear ill-founded, but as SCA has prevailed on substance they are ultimately harmless.

[2] Cash deposit rates were published in two final results of the administrative review of an antidumping duty order covering ball bearings and parts thereof. Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews, 57 Fed. Reg. 28,360, 28,361 (Dep't Commerce June 24, 1992); Final Results of Antidumping Duty Administrative Reviews and Revocation in Part of an Antidumping Duty Order, 58 Fed. Reg. 39,729, 39,730 (Dep't Commerce July 26, 1993).

[3] The March 14, 2001 Instructions then assessed duties on certain ball bearings sold to certain U.S. customers, including those at issue here, [[
                                               ]]  Pl.'s Br. 10.

[4] SCA and the Government agreed to refer to the relevant language, "as shown on the commercial invoice or customs document," as the "Evidence Restriction." Pl.'s Br. 10; Def.'s Mem. in Supp. of Cross-Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Br.") 2 n.2.

*Confidential Information Deleted*

its parent. Invoices[5] between SK and SCA reviewed by Customs did not list a U.S. end customer in a way readily decipherable by Customs through review of entry documents, Customs did not liquidate the subject merchandise in question according to Message 1073202. Def.'s Br. 3. On April 4, 2002, in its Clean-Up Liquidation Instructions, Message 2092207, Commerce instructed Customs:

> IF YOU ARE STILL SUSPENDING LIQUIDATION ON ANY ENTRIES OF AFBS FROM JAPAN DURING THE PERIOD 5/1/1993 THROUGH 4/30/1994 AFTER APPLYING ALL OF THE ABOVE LIQUIDATION INSTRUCTIONS, YOU SHOULD NOW LIQUIDATE SUCH ENTRIES AT THE DEPOSIT RATE REQUIRED AT THE TIME OF ENTRY OF THE MERCHANDISE.

Pl.'s Mot. for Summ. J. Ex. 15.[6] Customs then liquidated the subject goods in question at the deposit rates of 9.22% and 13.11%. Pl.'s Br. 9, 11.

SK, the importer's parent company, had purchased the subject merchandise from Nankai Seiko Co., Ltd. ("SMT"). Pl.'s Br. 5–6. When packaging the goods, SMT marked the cartons in which the goods were packaged with a three letter acronym indicating the U.S. customer. Id. SCA imported and entered the goods. Id. At entry, Customs was presented with

---

[5] The SK Invoices stated for each line item of the subject merchandise: brand name and type of subject merchandise, manufacturer's name and address, quantity of subject merchandise, the product number assigned, the outside diameter and net weight of the subject merchandise, and the unit price for each item in U.S. dollars. Pl.'s Mot. for Summ. J. Ex. 1–11; Pl.'s Br. 7. The SK Invoices include no direct reference to the two U.S. customers at issue. See Pl.'s Mot. for Summ. J. Ex. 1–11.

[6] Commerce has no way of knowing what Customs actually did at liquidation. This instruction tells Customs what to do for entries which were not covered by previous instructions. As the entries at issue were covered by previous instructions, this message by its terms does not apply. In any case, the Government does not argue that even if SCA had made clear at entry that the sales were made to the specified customers, that because the government had not liquidated the entries at the time of the second message, reliquidation in accordance with the earlier instruction was impossible. The Government seems to accept that if all the relevant documentation were presented at the time of entry, the first message would control.

the SK Invoice to SCA, which did not plainly list the two ultimate U.S. Customers. See Pl.'s Mot. for Summ. J. Ex. 1–11. After entry, SCA obtained SCA-to-customer invoices reflecting the post-entry sale of the subject goods to the two specific U.S. customers at issue. Pl.'s Br. 6. These are referred to as the "DC Invoices" in the briefing.[7] See Pl.'s Br. 8.

　　　　　In August 2007, SCA timely protested to Customs that the subject merchandise in question was ultimately sold to U.S. customers listed in Message 1073202 and therefore Customs should reliquidate those entries at the lower rate required by that message. Customs denied SCA's protest under 19 U.S.C. § 1515, presumably because the papers presented at entry did not identify to Customs a U.S. customer listed in Message 1073203. Pl.'s Br. 12. The denial itself refers only to the later Clean-Up Instructions from Commerce. SCA moved for summary judgment. The Government cross-moved for summary judgment.

## STANDARD OF REVIEW & JURISDICTION

　　　　　Jurisdiction lies under 28 U.S.C. § 1581(a) (protest denial jurisdiction). Summary judgment is appropriate if the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists. CIT R. 56(c); Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968 (Fed. Cir. 2009). Customs' denial of protests are reviewed de novo. 28 U.S.C. § 2640(a)(1); Jazz Photo Corp. v. United States, 502 F. Supp. 2d 1277, 1293 (CIT 2007); Rollerblade, Inc. v. United States, 112 F.3d 481, 484 (Fed. Cir. 1997) (any presumption of correctness is irrelevant where there is no factual dispute between the parties, because the court

---

[7] The DC Invoices stated for each line item of the subject merchandise: brand name and type of subject merchandise, U.S. customer's name and address, SMT's name and address, the quantity of subject merchandise, the product number assigned by SMT or the U.S. customer, and the unit price for each item in U.S. dollars. Pl.'s Mot. for Summ. J. Ex. 1–11; Pl.'s Br. 8–9.

is required to decide the legal issues).[8]

## DISCUSSION

I. **Commerce's Instructions Do Not Prohibit Customs From Examining Post-Entry Invoices at Protest**

SCA alleges that the terms "sold" and "the commercial invoice" in the SMT Instructions as applied to these entries refer to sales after entry and documents generated after entry. Pl.'s Br. 13. Specifically, SCA argues that Customs' interpretation of the SMT Liquidation Instructions, as referring only to sales made and commercial invoices generated prior to entry date, violates statutory provisions requiring covered entries to be liquidated in accordance with the original review results or judicial review. Pl.'s Br. 14. This claim would have merit if the Government adhered to it but the Government has made clear that it is not claiming that post-entry sales may not be considered.[9] Oral Argument, Shinyei Corp. of Am. v. United States, No. 08-00191 (CIT May 26, 2011). The Government argues rather that the importer must make the fact of the post-entry sales clear to Customs in its entry documents. Id.

We start with the proposition that Customs must interpret Commerce's

---

[8] The Government claims that Customs receives Skidmore deference for its interpretation of liquidation instructions. Def.'s Reply to Pl.'s Resp. to Def.'s Cross-Mot. for Summ. J. ("Def.'s Resp. Br.") 2 (citing Skidmore v. Swift & Co., 323 U.S. 134 (1944)). Commerce's instructions themselves do not receive deference. Jilin Henghe Pharm. Co. v. United States, 342 F. Supp. 2d 1301, 1305 (CIT 2004), judgment vacated as moot, 123 Fed. App'x 402 (Fed. Cir. 2005). The instructions must reflect antidumping duty review results. Customs has no role in the antidumping process, so no deference is afforded to Customs' interpretation of instructions outside its expertise. In any case the instructions are clear.

[9] Such an interpretation would be inconsistent with 19 U.S.C. § 1677a(b) which recognizes that some sales used to calculate U.S. price in making the antidumping comparison may occur after entry.

instructions precisely as Customs' role in the process should be ministerial: Customs should do no more than enact the intentions of Commerce. Mittal Steel Galati S.A. v. United States, 491 F. Supp. 2d 1273, 1281 (CIT 2007) (citing Mitsubishi Elecs. Am., Inc. v. United States, 44 F.3d 973, 977 (Fed. Cir. 1994)). First, nothing in the fragment, "SOLD TO (AS SHOWN ON THE COMMERCIAL INVOICE OR CUSTOMS DOCUMENT) THE FIRMS LISTED BELOW," limits "sold" and "commercial invoice" to a specific time frame. Assuming it could do so without running afoul of the protest statute and decades of law interpreting it, if Commerce wished to limit the time frame for submission of documentation, Commerce would have added the words "as presented at the time of entry." Commerce did not place such a limitation in the instructions, and probably could not lawfully do so.

Next, even if Customs did not have the relevant information at entry to determine whether or not the goods were ultimately sold to the specific U.S. customers listed in the instructions from Commerce, Customs apparently had that information at the time of protest.[10] Customs must look to reality at protest, correcting any mistakes made at entry regardless of the record evidence at time of entry. See 19 U.S.C. § 1514; United States v. C. J. Tower & Sons of Buffalo, Inc., 499 F.2d 1277, 1280 (C.C.P.A. 1974) (assuming the importer was permitted to submit post-entry evidence to Customs but permitting the importer to submit such evidence before the Customs Court to correct a mistake of fact made at entry). It would be illogical for Customs not to look at evidence which is available at protest, only to trigger a court review where the evidence would be examined. See ITT Corp. v. United States, 24 F.3d 1384, 1394

---

[10] The protest submitted to the court reflects that the actual documentation was to be provided after the protest was recorded. The Government does not allege that SCA did not or was not willing to submit the invoices at that time.

(Fed. Cir. 1994) ("the statutory scheme for review of Customs' denial of a [reliquidation request] contemplated the evaluation of evidence beyond that considered by Customs" and evidence at trial "is not limited to merely that which is contained in the administrative record before Customs"); C. J. Tower, 499 F.2d at 1280.[11]

Here, Customs, for good reason or not, was incorrect in determining that the subject goods were not sold to certain U.S. customers and thus were not covered by the first message. See Pl.'s Mot. for Summ. J. Ex. 1–11. Because Customs made an error, in the sense of liquidating the entries in a manner that conflicted with Commerce's instructions, which in turn implement the antidumping review results, the statute requires Customs to correct the mistake at protest. See 19 U.S.C. § 1514(a); Ford Motor Co. v. United States, 157 F.3d 849, 857 (Fed. Cir. 1998) (finding that protesters can correct errors made not only by employees of Customs but also by employees of the importer, thus implying that Customs must consider additional documentation submitted by the importer at protest). The Government is incorrect that antidumping duties lead to a narrowing of protest rights. There are not two protest procedures, one for ordinary duties and one for unfair trade duties. There is one procedure. 19 U.S.C. § 1514(a). Thus, Customs erred in not considering additional documents at protest to demonstrate the correct amount of duties owed.

The Government claims that requiring Customs to look at invoices not extant at

---

[11] These decisions refer to the now repealed 19 U.S.C. § 1520(c), which provided a longer time for correction of mistakes of fact than for protesting other errors. There is now one time period for filing protests based on mistake of law or fact. See 19 U.S.C. 1514(a)&(c) (2004).

the time of entry would create an incalculable administrative burden. Def.'s Br. 14.[12] Customs, however, need not necessarily expand its review at entry as the right of protest permits correction of any error. Protest under 19 U.S.C. § 1514 is the principal means by which importers may challenge an erroneous decision of Customs. See 19 U.S.C. § 1514(a); United States v. U.S. Shoe Corp., 523 U.S. 360, 365 (1998) (holding that a protest under 19 U.S.C. § 1514 "is an essential prerequisite when one challenges an actual Customs decision"). Resolving errors of this nature at protest puts to rest the Government's concerns regarding the administrative burden at entry, Def.'s Br. 14–16, and possible statutory time frame violations,[13] Def.'s Resp. Br. 11.

The Government also claims that its actions in the instant case were purely ministerial. Def.'s Br. 7. Presumably it means that to do more than it did would invade Commerce's provision. Specifically, the Government states that Customs merely complied with Customs' practice since 2000, which has been and continues to be to review only those documents in existence at the time of entry, excluding post-entry invoices, thereby standardizing the review of every entry. Def.'s Br. 2–3, 9; Def.'s Cross-Mot. for Summ. J. Amdur Decl. ¶ 9–10, 12. Thus, the Government contends, Customs merely read the liquidation instructions to be in compliance with its regulations. Def.'s Br. 10.[14] Ministerial duty—which gives rise to a

---

[12] See supra, n. 9.

[13] The Government also has 19 U.S.C. § 1504(b)(1) at its disposal to prevent deemed liquidation at entry rates for delayed liquidation, permitting the Government to "extend the period in which to liquidate an entry if . . . the information needed for the proper appraisement or classification of the imported or withdrawn merchandise . . . or for ensuring compliance with applicable law, is not available to the Customs Service." 19 U.S.C. § 1504(b)(1). It need not use this authority, however. It may simply liquidate as best it can and place the burden on the importer to prove its claim at protest.

[14] The Government also alleges that 19 C.F.R. § 142.3 provides for identification of
(continued...)

ministerial act—"is one in respect to which nothing is left to discretion." Mississippi v. Johnson, 71 U.S. 475, 498 (1866).  Here, Customs interpreted Commerce's instructions, rather than automatically appling an antidumping duty rate.  The act of interpretation is not purely ministerial.  Mitsubishi Elec., 44 F.3d at 977 ("Customs cannot modify . . . [Commerce's] determinations, their underlying facts, or their enforcement." (Internal quotation marks omitted)).  Deciding that its policies and regulations should be read expansively to override Commerce's instruction was a Customs decision.  Because Customs, in essence, modified Commerce's instructions, Customs' actions are not ministerial.

## II. DC Invoices Show Subject Goods Sold to Relevant U.S. Customers

Both parties contend that no genuine issue of material fact exists for the purposes of granting its motion.  Def.'s Resp. to Pl.'s Statement of Material Facts as to Which There Are No Genuine Issues to Be Tried ¶ 6; Mem. of Law in Opp'n to Def.'s Cross-Mot. for Summ. J. and in Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Pl.'s Resp. Br.") 8, 10.  SCA alleges that the DC Invoices submitted at protest demonstrate that the goods were sold to specific U.S. customers.[15]  This claim has merit and at oral argument the Government made clear that even

---

[14](...continued)
merchandise that enters the United States having been sold.  See Def.'s Br. 12 (citing 19 C.F.R. § 142.3(6).  To the extent the Government relies on its own regulations to argue that "commercial invoice" in Commerce's instructions means only the invoice provided at the time of entry, Def.'s Br. 7–8, it errs.  The relevant regulation only shows that entry documentation requires inter alia "a commercial invoice."  See 19 C.F.R. § 142.3.  It does not limit the documentation that can be filed with a protest under 19 C.F.R. § 174.11 et seq.

[15] SCA alleges, in the alternative, the court should find that the markings on the side of the cartons and the U.S. Customer's post office box number on the SK Invoices were sufficient for Customs to find that the subject goods were sold to the relevant U.S. customers at the time of entry.  Pl.'s Resp. Br. 23 n.19.  As this matter is resolved on the evidence of the DC Invoices, the
(continued...)

Court No. 08-00191																								Page 10

under the court's view of Customs' duty at protest no issue of material fact exists.

The DC Invoices clearly show that each of the entries protested were sold to a U.S. customer listed in Message 1073202. Because SCA made its claim clear at protest and Customs should have examined the additional invoices at protest, if they were presented, and the court may do so now, and because no genuine issue of material fact exists, the court grants summary judgment in favor of SCA.

## CONCLUSION

For the above reasons, the court concludes that SCA's motion for summary judgment is **GRANTED** and the Government's cross-motion for summary judgment is **DENIED**. The entries shall be liquidated at the rates ordered by Commerce in Message 1073202 and refund made, with interest, as provided by law. Judgment shall enter accordingly.

                                                                                               /s/ Jane A. Restani
                                                                                                 Jane A. Restani
                                                                                                       Judge

Dated: This 15th day of June, 2011.
       New York, New York

---

[15](...continued)
court need not decide whether Customs erred in not interpreting the markings on the packages, or whether SCA failed in some duty to provide the code. If a proper protest is made, all mistakes may be fixed, those of Customs and those of the importer. The court need not decide who should have done what.

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SHINYEI CORPORATION OF AMERICA,**<br><br>    Plaintiff,<br><br>  v.<br><br>**UNITED STATES,**<br><br>    Defendant. | **Before: Jane A. Restani, Judge**<br><br>**Court No. 08-00191** |

## **JUDGMENT**

  This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is hereby

  ORDERED that Plaintiff Shinyei Corporation of America's Motion for Summary Judgment is granted, and Defendant United States' Cross-Motion for Summary Judgment is denied.

                     /s/ Jane A. Restani
                      Jane A. Restani
                        Judge

Dated: This 15th day of June, 2011
     New York, New York